UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

EDWARDO ALEXANDRO MATHEW  :
                           :
        v.                 :  C.A. No. 09-253S
                           :
CENTRAL FALLS DETENTION    :
FACILITY CORPORATION, et al.  :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court are Motions to Dismiss filed by the Official Capacity Federal Defendants,[1] Individual Capacity Federal Defendants[2] and the Wyatt Defendants[3] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Document Nos. 58, 59, 60). Plaintiff opposes the Motions. (Document Nos. 63, 66). These Motions have been referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After reviewing the parties' submissions, I have determined that a hearing is not necessary to resolve the legal issues presented in these Motions. For the reasons discussed below, I recommend that the District Court GRANT the Motions to Dismiss set forth by the Official Capacity Federal Defendants and the Individual Capacity Federal Defendants. (Documents No. 58, 59). I further recommend that the District Court GRANT the Motion to

---

[1] The United States of America, U.S. Immigration and Customs Enforcement ("ICE"), and Bruce Chadbourne, Michael Webster, Michael Chertoff, Donald Kent and Alberto Gonzales, in their official capacities, collectively comprise the "Official Capacity Federal Defendants."

[2] Bruce Chadbourne, Michael Webster and Michael Chertoff, in their individual capacities, are the "Individual Capacity Federal Defendants."

[3] Central Falls Detention Facility Corporation, Cornell Corrections of Rhode Island, Inc., Wayne T. Salisbury, Jr., Timothy E. Tapley, Deanna Pecchia, Maureen Medeiros, John Riedel, M.D., Captain Christopher Coburn, unknown Wyatt Correctional Officers, unknown Wyatt Administrators, and unknown Wyatt Medical Staff will be collectively referred to as the "Wyatt Defendants."

Dismiss of the Wyatt Defendants but also GRANT Plaintiff leave to file a Second Amended Complaint within thirty (30) days to pursue claims under the Eighth Amendment against the Wyatt Defendants under 42 U.S.C. § 1983. (Document No. 60).

**Background**

The following facts are set forth in Plaintiff's Amended Complaint. Plaintiff Edwardo Alexandro Mathew is a citizen of the Kingdom of the Netherlands and resides in Aruba. (Document No. 48 at ¶ 1). Plaintiff's wife is a citizen of the United States, and his two children were born in the United States. Id. ¶ 2. They presently reside in Rhode Island. On May 14, 2004, Plaintiff entered the United States on a visa waiver. Id. ¶ 5. Thereafter, Plaintiff filed an application (I-485 Form) to adjust his immigration status to Lawful Permanent Resident, on which he indicated that he had never been arrested. Id. ¶ 10. On January 19, 2005, Plaintiff was granted Lawful Permanent Resident status and issued a green card. Id. ¶¶ 5, 6. Plaintiff traveled outside of the United States and returned as a Lawful Permanent Resident four times. Id. ¶ 8.

Upon reentry to the United States on November 8, 2005, Plaintiff was placed into deferred inspection and paroled into the United States because he admitted that he had previously been arrested in Aruba, which contradicted his sworn answers on his I-485 Form. Id. ¶¶ 8, 9. As a result, Plaintiff was put into removal, i.e., deportation, proceedings. Id. ¶ 11. On May 9, 2006, Plaintiff was served with a Notice to Appear and taken into immigration custody and brought to the Donald W. Wyatt Detention Facility (the "Wyatt Detention Facility") in Central Falls, Rhode Island. Id. ¶ 13. Plaintiff remained at the Wyatt Detention Facility until June 15, 2006. Id. ¶ 31.

While detained at the Wyatt, Plaintiff claims he was placed in a cell without enough beds Id. ¶ 16, subject to random strip searches in front of other inmates and female staff members, id. ¶

17, that he was targeted and taunted by staff members, id. ¶ 18, and that he was unfairly placed in solitary confinement. Id. ¶ 19. Plaintiff alleges he was initially placed in solitary confinement for sixty days, but that was later reduced to twenty days. Id. ¶¶ 20, 21. During the solitary confinement, Plaintiff claims he was without water for five days, and forced to reside in a cell with a toilet filled with feces. Id. ¶ 22. He refused to eat the prison food during this time, fearing it was poisoned, and on June 9, 2006, was removed from the cell for purposes of a medical evaluation. Id. ¶¶ 22, 23. He claims that during the "extraction" from the cell, the guards jumped on his back, beat him on his back and head and choked him. Id. ¶ 23. The entire extraction was videotaped. Id. As a result of this, Plaintiff's previous back condition worsened and he was unable to walk. Id. ¶ 25.

While at the Wyatt Detention Facility, Plaintiff also alleges he was denied visits with his attorney and family members, id. ¶ 24, denied access to a wheelchair and other medical care, id. ¶¶ 26, 29, denied packaged commissary food when he refused to eat the prison food, id. ¶ 27, and subjected to inhumane conditions and mental anguish. Id. ¶ 28.

On June 15, 2006, Plaintiff was transferred to the "Bristol County jail." Id. ¶¶ 31, 32. He claims he was confined to bed for fifteen hours a day and that the lights were kept on twenty-four hours a day. Id. ¶ 32. On June 30, 2006, Plaintiff was transferred to "Plymouth county jail." Id. ¶ 33. He claims that he was transported to the jail on the floor of a van, and then dragged out by officials and thrown on the ground. Id. ¶ 33. He was immediately placed in solitary confinement and then denied contact with his lawyer and family members. Id. ¶ 34. He was then placed in the medical unit and denied treatment, as well as access to a phone, shower and fresh air. Id. ¶ 35. While at Plymouth County Jail, a doctor recommended that he be given access to a wheelchair due to his back injury. Id. ¶ 36. He was transferred to the "Suffolk County Jail" on July 26, 2006 and

on July 28, 2006, he was injured after he was denied access to the prescribed wheelchair. Id. ¶ 38. He also claims he was placed in administrative segregation and abused by the officials at the Suffolk County Jail, as well as being denied proper medical care. Id. ¶¶ 40-42.

On September 15, 2006, he was transferred to the "Buffalo Federal Detention Facility" where he was denied food, water, medical treatment and contact with his attorney and family. Id. ¶ 43. He was also abused by medical staff and prison officials. While being processed for deportation, he asserts that he was beaten by immigration officers. Id. ¶ 45. He was deported on September 12, 2007. Id. ¶ 1.

On June 2, 2009, Plaintiff filed his pro se Complaint in this Court. (Document No. 1). On November 16, 2009, both the Individual and Official Capacity Federal Defendants moved to dismiss the Complaint. (Document Nos. 14, 15). The Court granted those Motions absent opposition, but Plaintiff later belatedly responded with both a Motion to Amend the Complaint and papers in opposition to the Motion to Dismiss. (Document Nos. 18, 25, 28, 30). The Court ultimately vacated the dismissal order and permitted Plaintiff to file an Amended Complaint. (Document Nos. 42, 47). On August 10, 2010, Plaintiff filed his Amended Complaint. (Document No. 48). The Amended Complaint sets forth various claims against the three groups of Defendants.

Count I alleges a Fifth Amendment Due Process Claim against the United States and ICE for his detention prior to removal; Count II alleges a 42 U.S.C. § 1983 claim against the United States and ICE based on the period of time he was detained prior to removal; Count III alleges a violation of Plaintiff's Eighth Amendment rights based on his conditions of confinement against Bruce Chadbourne, Michael Webster, Michael Chertoff, the Central Falls Detention Facility Corporation and the Wyatt Detention Facility Defendants; Count IV, which is lodged against the

United States, ICE, the Central Falls Detention Facility Corporation and the Wyatt Detention Facility Defendants alleges a violation of Article Five of the United Nations Convention Against Torture based on Plaintiff's alleged mistreatment while in immigration detention; Count V alleges that the United States and ICE violated Article 36 of the Vienna Convention on Consular Relations by failing to allow contact between the Netherlands Consulate and Plaintiff; Count VI alleges a violation of the Sixth Amendment right to counsel against the Central Falls Detention Facility, the Wyatt Detention Facility Defendants, Bruce Chadbourne, Michael Webster and Michael Chertoff for allegedly failing to permit Plaintiff to confer with his attorney; Counts VII through X allege Intentional Infliction of Emotional Distress against various Defendants; and finally, Counts XI and XII are state law assault and battery and negligence claims against The Cornell Companies, Inc. In resolving the pending Motions, the Court will address the arguments presented by each group of Defendants in turn.

**Discussion**

**A.    Standard of Review**

Defendants have moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. Motions to dismiss under Rules 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Masterson v. United States, 200 F. Supp. 2d 94, 97 (D.R.I. 2002) (citing Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir.1994)). In ruling on such a motion, the Court construes the complaint in the light most favorable to the plaintiff, see Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I. 1998); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I. 1992), taking all well-pleaded

allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995). While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559). See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 ("when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead," the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, Nos. 08-2283, 09-1801, 2010 WL 5093220, *4 (1st Cir. Dec. 10, 2010).

### B. The Official Capacity Federal Defendants

The Official Capacity Federal Defendants move to dismiss the claims against them alleging that the Court lacks subject matter jurisdiction over Plaintiff's claims and that Plaintiff has failed to state a claim upon which relief can be granted. (Document No. 58).

The Official Capacity Federal Defendants claim that sovereign immunity shields them from the constitutional, federal, statutory and international law claims Plaintiff asserts against them. Id. at pp. 10-11. The doctrine of sovereign immunity bars suits against the federal government, its agencies and federal agents acting in their official capacities. Baez v. Connelly, No. 10-399ML, 2011 WL 2462301, *8-9 (D.R.I. June 17, 2011) (citing McCloskey v. Mueller, 446 F.3d 262, 271-272 (1st Cir. 2006)). In order for Plaintiff to bring claims against the United States, there must be an express waiver of the United States' sovereign immunity. Muirhead v. Mecham, 427 F.3d 14, 17 (1st Cir. 2005). In the present case, Plaintiff brings suit against the United States and ICE under 42 U.S.C. § 1983 and the Fifth Amendment to the United States Constitution, Article V of the United Nations Convention Against Torture ("UNCAT"), Article 36 of the Vienna Convention on Consular Relations and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et. seq. (Document No. 48 at pp. 9-16).

Plaintiff has not identified an express waiver of sovereign immunity that would permit his claims against the United States and ICE to proceed, instead he simply asserts that subject matter jurisdiction is based upon 28 U.S.C. § 1331. As discussed below, relief in unavailable against the United States and ICE under these statutes. First, as to 28 U.S.C. § 1331, the First Circuit has held that 28 U.S.C. § 1331 does not waive sovereign immunity and cannot serve as an independent basis for jurisdiction over the federal government. See Berman v. United States, 264 F.3d 16, 20 (1st Cir. 2001). Moreover, neither 42 U.S.C. §1983 nor Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), permit claims to proceed against federal officers in their official capacities since such official capacity claims are considered to be against the federal government. McCloskey, 446 F.3d at 271-272. See also Tapia-Tapia v. Potter, 322 F.3d 742, 746

(1st Cir. 2003) ("[T]he Supreme Court has refused to recognize a Bivens remedy against federal agencies."). The sole federal statute remaining is the FTCA. While the "FTCA evinces a waiver of sovereign immunity with respect to certain categories of torts committed by federal employees in the scope of their employment," Bolduc v. United States, 402 F.3d 50, 55 (1st Cir. 2005), the waiver is "only for certain claims arising under state law." Baez, 2011 WL 2462301 at *8-9 (emphasis in original). Thus, the FTCA does not act as a waiver of sovereign immunity for the constitutional, federal statutory and international law claims asserted by Plaintiff. See, e.g., Bansal v. Russ, 513 F. Supp. 2d 264, 280 (E.D. Pa. 2007) (noting that claim based on Article 36 of Vienna Convention against federal officers in their official capacities could not proceed under FTCA because sovereign immunity acted as a bar).

Because there is no identifiable express waiver of sovereign immunity, Plaintiff's claims against the United States and ICE based upon constitutional, federal statutory and international law are procedurally precluded, and I therefore recommend that the District Court dismiss them.

As noted, the FTCA does waive sovereign immunity with respect to certain state law torts. The only remaining claim against the United States and ICE is an FTCA tort claim alleging intentional infliction of emotional distress pursuant to Rhode Island law. (Document No. 48 at ¶¶ 186-196). The United States argues that this claim must fail because Plaintiff failed to exhaust his administrative remedies and because the allegations fail to state a claim upon which relief can be granted. Exhaustion of administrative remedies is a mandatory prerequisite to a tort suit under the FTCA. 28 U.S.C. § 2675(a); Baez, 2011 WL 2462301 at *9. Plaintiff asserts in his unsworn Amended Complaint that he filed an administrative claim with the Attorney General on March 22, 2007. (Document No. 48 at ¶ 191). However, Plaintiff presents absolutely no evidence that he filed

such a claim, and the United States has submitted uncontroverted affidavits indicating that neither the Department of Justice nor ICE has any record that they ever received an administrative claim from Plaintiff. (Document No. 58-1 at ¶ 3; Document No. 58-2 at ¶ 3). Receipt, and not submission, of the administrative claim is paramount. See 28 C.F.R. § 14.2 ("[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant...written notification of an incident, accompanied by a claim for money damages in a sum certain ...") (emphasis added). Without any competent evidence that he exhausted his administrative prerequisites, his FTCA claim must fail. Acosta v. U.S. Marshals Serv., 445 F.3d 509, 513 (1st Cir. 2006) (exhaustion requirement is a "non-waivable jurisdictional requirement.") (citation omitted). Additionally, since the two-year statute of limitations has expired, there is no purpose in allowing the claim to proceed since it would be untimely.

Because I conclude that he failed to exhaust his administrative remedies, I also recommend that the District Court dismiss Plaintiff's FTCA claim. With no remaining claims against the Official Capacity Federal Defendants, I recommend that their Motion to Dismiss (Document No. 58) be GRANTED.

### C. Individual Capacity Federal Defendants

The Individual Capacity Federal Defendants are Michael Webster and Bruce Chadbourne, alleged to be high-level ICE administrators/directors, and Michael Chertoff, the former Homeland Security Secretary. (Document No. 48 at ¶¶ 215-217). Plaintiff alleges three claims against them, all purportedly under the rubric of Bivens. He alleges a violation of the Eighth Amendment prohibition against cruel and unusual treatment, a violation of the Sixth Amendment's right to

counsel and an intentional infliction of emotional distress claim regarding his treatment while in immigration detention.

The Individual Capacity Federal Defendants claim that they are entitled to qualified immunity. Qualified immunity is an affirmative defense that protects government officials performing discretionary functions from civil liability unless they knew or should have known that their conduct violated the Constitution. See Wilson v. Layne, 526 U.S. 603, 609 (1999); and Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). "To determine whether a particular [governmental employee] is entitled to qualified immunity, a court must decide: (1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." Estrada v. Rhode Island, 594 F.3d 56, 62-63 (1st Cir. 2010) (citation omitted). If both of those inquiries are answered in the affirmative, the Court considers: (1) the clarity of the law at the time; and (2) whether, on the facts of the case, a reasonable defendant would have understood that his conduct violated the plaintiff's civil rights. Id. at pp. 62-63. This final aspect of the test, although "a legal determination, is highly fact specific." Id. (quoting Nelson v. Kline, 242 F.3d 33, 35 n.2 (1st Cir. 2001)).

In this case, the threshold issue is whether the allegations made against the Individual Capacity Federal Defendants in Plaintiff's Amended Complaint are sufficient to allege their personal involvement in the denial of a constitutional right. The sufficiency of Plaintiff's allegations in the Complaint is "inextricably intertwined with...the qualified immunity defense." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1946-1947 (2009) (internal citations and quotations omitted). "When a defendant's quest for the protection that qualified immunity affords is brought to the Court's attention via a motion to dismiss, the qualified immunity analysis must be based on the facts stated in the

complaint." Solis-Alarcon v. United States, 432 F. Supp. 2d 236, 246-247 (D.P.R. 2006). "'[B]are assertions' that 'amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim' are insufficient to state a claim of a constitutional violation, and do not defeat a claim of qualified immunity." Coy Phelps v. Local 0222, No. 09-11218-JLT, 2010 WL 3342031 at *7 (D. Mass. August 20, 2010) (quoting Iqbal, 129 S.Ct. at 1951, 1954).

Viewing this requirement to plead specific facts in the context of a Bivens claim, the District of Massachusetts stated that, "because there is no vicarious liability in a Bivens or other constitutional challenge, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Coy Phelps, 2010 WL 3342031 at *7 (quoting Iqbal, 129 S.Ct. at 1948). "Absent personal involvement in, or personal knowledge of, the alleged unconstitutional acts, the named defendant federal supervisor must be dismissed as a Bivens defendant." Perez Olivo v. Gonzalez, 384 F. Supp. 2d 536, 544 (D.P.R. 2005)

With these guideposts framing the legal issue under consideration, the Court considers the allegations related to the Eighth and Sixth Amendment violations claimed by Plaintiff. Plaintiff alleges he was denied food and water and subject to inhumane conditions while in the custody of ICE. He also alleges he was denied the right to see his attorney. Plaintiff, however, pleads no facts which affirmatively link any of the Individual Capacity Federal Defendants with the alleged unconstitutional conduct. Even reading Plaintiff's allegations and legal claims liberally, as the Court must do since they have been put forth by a pro se litigant, see Haines v. Kerner, 404 U.S. 519, 520-521 (1972), Plaintiff's conclusory allegations are insufficient to plead the personal involvement or knowledge of the Individual Capacity Federal Defendants and solely plead a theory of vicarious liability which is not legally viable. In other words, Plaintiff has not alleged any plausible facts

supporting the conclusion that Chadbourne, Webster and/or Chertoff were personally involved in Plaintiff's conditions of confinement or access to legal representation. Accordingly, the Court need not continue to the other prongs of the qualified immunity test since Plaintiff has not alleged any facts which tie these Defendants to the alleged unconstitutional conduct.

Finally, Plaintiff purports to assert a <u>Bivens</u> claim for intentional infliction of emotional distress under Rhode Island law against the Individual Capacity Federal Defendants. Plaintiff mislabels his claim as a <u>Bivens</u> claim, and it is instead a claim under the FTCA. See <u>Ratigan v. Trogvac</u>, No. 4:CV-08-1667, 2009 WL 648931, 31 (M.D. Pa. March 11, 2009) ("Plaintiff cannot raise a state law Intentional Infliction of Emotional Distress ("IIED") claim in this <u>Bivens</u> civil rights action. The FTCA, and not a <u>Bivens</u> action, is for claims against employees of the United States for money damages with respect to a tort cause of action."). Under the Federal Employees Liability Reform and Tort Compensation Act of 1988, (the "Westfall Act"), federal employees have absolute immunity for the actions allegedly taken while they are performing official duties. In this case, the United States certified that the Individual Capacity Federal Defendants were acting in their scope of employment and thus, they are immune from suit, and the United States must be substituted as a party. Despite the mandatory substitution, the United States is immune from suit for these causes of action. The Court of Appeals has noted that, "the FTCA is the exclusive remedy even when, as here, an exception to the FTCA precludes government liability." <u>Aversa v. United States</u>, 99 F.3d 1200, 1207-1208 (1st Cir. 1996). Accordingly, I recommend that the claims against the Individual Capacity Federal Defendants' Motion to Dismiss (Document No. 59) be GRANTED.

### D. The Wyatt Defendants

The final group of Defendants, the Wyatt Defendants, move to dismiss the claims against them on Fed. R. Civ. P. 12(b)(6) grounds. Plaintiff asserts six claims against the Wyatt Defendants.

First, Plaintiff alleges an Eighth Amendment violation pursuant to Bivens. Plaintiff's Eighth Amendment claims focus on two groups: first, Plaintiff brings a claim against the Central Falls Detention Facility Corporation ("CFDFC"), the owner of the Wyatt Detention Facility; and second, Plaintiff brings a claim against certain individual employees of the Wyatt. In Carlson v. Green, 446 U.S. 14, 17 (1980) the Supreme Court extended Bivens to allow a plaintiff to recover monetary damages against a federal official that violates their Eighth Amendment prohibition against cruel and unusual punishment. The Court has never extended Bivens to allow recovery against corporate defendants, such as the Central Falls Detention Facility Corporation. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 71 (2001) ("[I]f a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not on the individual directly responsible for the alleged injury."); and Sarro v. Cornell Corr., Inc., 248 F.Supp. 2d 52, 62 (D.R.I. 2003). Accordingly, Plaintiff's Eighth Amendment claim against CFDFC should be dismissed.

Plaintiff has also brought an Eighth Amendment claim against certain individual employees at the Wyatt. While CFDFC owns the Wyatt, it contracted at the time with Cornell Corrections of Rhode Island, Inc., to operate the Wyatt facility. (Document No. 60 at p. 7). Cornell was the entity that employed the correctional officers targeted by Plaintiff's Eighth Amendment claims. The federal courts are split on the question of whether a claimant can bring an Eighth Amendment Bivens claim against individual employees of a privately-run prison. The Fourth, Tenth and Eleventh Circuits, along with several district courts, have held that a claimant may not pursue a

Bivens claim against the individual employees of a privately-run prison because the individuals are not federal actors, and the claimant has adequate remedies under state law. See Holly v. Scott, 434 F.3d 287 (4th Cir. 2006); Peoples v. CCA Det. Ctrs., 422 F.3d 1090 (10th Cir. 2005); Alba v. Montford, 517 F.3d 1249 (11th Cir. 2008); Baez v. Cornell Companies, Inc., C.A. No. 3:10-24, 2010 WL 5648572, *3 (W.D. Pa. Dec. 23, 2010); and Fabian v. Dunn, No. SA-08-cv-269-XR, 2009 WL 2461207, *5 (W.D. Tex. Aug. 6, 2009). On the other hand, the Ninth Circuit and the Southern District of New York have reasoned that a claimant can bring a Bivens claim under such circumstances, finding that the individual employees acted under color of federal law. See Pollard v. GEO Group, Inc., 607 F.3d 583 (9th Cir. 2010); and Bender v. Gen. Servs. Admin., 539 F.Supp. 2d 702 (S.D.N.Y. 2008).

The First Circuit Court of Appeals has not addressed the issue, and the District of Rhode Island has two opposing cases on point. In Sarro v. Cornell Corr., Inc., 248 F. Supp 2d. 52 (D.R.I. 2003), Judge Torres found that a Bivens action existed against individual employees of the Wyatt Detention Facility, while in Lacedra v. Donald W. Wyatt Det. Facility, 334 F. Supp. 2d 114 (D.R.I. 2004), Judge Lagueux subsequently held that Bivens did not provide a cause of action against the individual employees of the Wyatt Detention Facility, since those employees were acting under color of state law. Lacedra, 334 F. Supp. 2d at 140-141. ("...Defendants acted under color of state law when they carried on the traditional public function of prison operations at the Wyatt Facility....The Cornell Defendants and the individuals they employ act under color of state law...because they are able to trace their traditional public function of prison operations to the CFDFC, the City of Central Falls, and finally, to the State of Rhode Island.")

The central holding of Lacedra has been followed in subsequent decisions of this Court. See Caldwell v. Donald W. Wyatt Det. Facility, et.al., No. 10-15ML, 2010 WL 2636101, *2 (D.R.I. May 12, 2010) (noting that "this Court has previously ruled that the employees of a corporation operating Wyatt should be considered as acting under state law for purposes of § 1983"); Watrous v. Salisbury, No. 09-599S, 2010 WL 2035364, *3 (D.R.I. April 27, 2010) (same). Additionally, Judge Lagueux's reasoning in Lacedra relied on the Supreme Court's reluctance in Malesko to extend Bivens to hold individual employees of a privately-run prison liable when other means of relief were available. Lacedra, 334 F. Supp. 2d at 138-141 ("the proper cause of action against these Defendants is under 42 U.S.C. § 1983.")

After reviewing the case law, this Court follows the more recent precedent and finds that the individual employees of the Wyatt Detention Facility are not federal actors, foreclosing Plaintiff's claims as Bivens claims under the Eighth Amendment. Like the Lacedra case, Plaintiff's Biven claim is legally decificent, but he has a potentially viable claim under 42 U.S.C. § 1983. Accordingly, I recommend that the Eighth Amendment Bivens claim against the individual employees at the Wyatt Detention Facility be DISMISSED, and I further recommend that Plaintiff be GRANTED thirty (30) days within which to amend his claim to pursue a 42 U.S.C. § 1983 claim against such Defendants, if he so elects.

Plaintiff's second claim against these Defendants asserts a Bivens claim under the Sixth Amendment. His purported Sixth Amendment claim stems from his allegation that he was denied the right to consult with counsel while he was in immigration detention. Like his Eighth Amendment claim under Bivens, his Sixth Amendment claim under Bivens fails because it is legally deficient. The Supreme Court has never recognized a right to bring a Bivens claim in the context of the Sixth Amendment. See Malesko, 534 U.S. at 66-68 (noting that Bivens had been extended

to include causes of actions for violation of the Fourth, Fifth and Eighth Amendments, but not "into any new context."). However, unlike his Eighth Amendment claim under Bivens, there is no alternative relief available under 42 U.S.C. § 1983 because the Sixth Amendment's guarantees do not apply in this context. The Sixth Amendment to the United States Constitution guarantees the right to counsel, "[i]n all criminal prosecutions..." U.S. Const. amend. VI. It is undisputed that "deportation is a civil proceeding, rather than a criminal one..." Tavares v. Ashcroft, 371 F. Supp. 2d 61, 66 (D.P.R. 2005), therefore, the "sixth amendment is not implicated...and the rights afforded to those accused of committing crimes are not invoked." Ramos v. Thornburgh, 761 F. Supp. 1258, 1260 (W.D. La. 1991). Because the Sixth Amendment's protections do not apply in this context, the Court recommends that the Sixth Amendment claim be dismissed.

Plaintiff also asserts claims under Article 5 of the United Nations Convention Against Torture ("UNCAT"). In Renkel v. United States, 456 F.3d 640 (6th Cir. 2006) the Court of Appeals for the Sixth Circuit held that there is no implied private right of action under UNCAT. The Court noted that, while treaties such as UNCAT have the same "legal effect as statutes," only "self-executing" treaties provide a private right of action. Id. at 642-643. The Court noted that Articles 1-16 of UNCAT are not self-executing, id. at 644, and that Article 5 "criminalize[s] torture outside the United States; [but] do[es] not provide civil redress for torture within the United States." Id. at 644-645. For these reasons, I recommend that the Plaintiff's claims under Article 5 of UNCAT be DISMISSED.

The only remaining claims are Plaintiff's state law claims for intentional infliction of emotional distress, assault and battery and negligence. I have previously recommended that the District Court dismiss all of Plaintiff's federal claims against the federal actors in both their official and individual capacities, thus, I further recommend that the District Court decline to exercise

supplemental jurisdiction over Plaintiff's state law claims against the federal Defendants. 28 U.S.C. § 1367(c). Accordingly, I recommend that these state law claims be DISMISSED without prejudice so that Plaintiff may pursue his claims in state court, should he so desire. However, Plaintiff has also set forth several state law claims against the Wyatt Defendants, and if the District Court accepts my recommendation to allow Plaintiff to amend his Complaint to pursue a claim(s) under 42 U.S.C. § 1983, and he does so, I recommend that the Court exercise supplemental jurisdiction over the state law claims against the Wyatt Defendants, since the claims are based on the same set of facts. 28 U.S.C. § 1367(a). If Plaintiff does not file a Second Amended Complaint, I recommend that these state law claims also be DISMISSED without prejudice.

**Conclusion**

For the foregoing reasons, I recommend that the District Court GRANT the Motions to Dismiss filed by the Official Capacity Federal Defendants and the Individual Capacity Federal Defendants. (Document Nos. 58, 59). I further recommend that the District Court GRANT the Motion to Dismiss filed by the Wyatt Defendants but also GRANT Plaintiff leave to file a Second Amended Complaint within thirty (30) days to pursue claims under the Eighth Amendment against the Wyatt Defendants under 42 U.S.C. § 1983. (Document No. 60). With respect to the state law claims, I recommend that they be DISMISSED without prejudice except for those against the Wyatt Defendants if Plaintiff is granted leave to file a Second Amended Complaint against them and does so.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 30, 2011